# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MATTHEW SCHOENECKER,**
          Plaintiff,

v.                                       Case No. 18-C-0555

**JOHN KOOPMAN, individually and
in his official capacity as Principal
of Markesan High School,**
          Defendant.

## DECISION AND ORDER

The plaintiff, Matthew Schoenecker, brings this action for prospective relief under 42 U.S.C. §1983 against the principal of his high school, John Koopman. Before me now is the plaintiff's motion for a preliminary injunction and the defendant's motion to dismiss the second amended complaint.

## I. BACKGROUND

During his freshman year at Markesan High School, a public high school in Wisconsin, the plaintiff began wearing two T-shirts to school that depict weapons. One shirt bears the legend "Celebrate Diversity" on the front, underneath an image depicting a variety of firearms. The other shirt has the word "LOVE" written on the front in a stylized manner, with the letters of the word spelled by images of weapons. The "L" is a handgun, the "O" is a hand grenade, the "V" is two knives, and the "E" is a rifle. The shirts are shown below.



The plaintiff states that he is a firearms and sport-shooting enthusiast. He states that he "believe[s] in the value to society of personal possession of arms as guaranteed by the Second Amendment," and that he wears the shirts to express this belief. (Second Dec. of Matthew Schoenecker ¶¶ 6–7.) According to him, the shirts depict weapons in "a non-violent, non-threatening manner." (First Decl. of Matthew Schoenecker ¶ 28.)

The plaintiff's shirts made some of the teachers at the school uncomfortable, and when he wore them the teachers sent him to the office of John Koopman, the school's principal. Koopman told the plaintiff that his shirts violated the school's dress code because they depicted weapons. At that time, the dress code did not explicitly prohibit students from wearing clothing that depicted weapons, but Koopman claimed that the dress code gave him discretion to interpret it, and he exercised that discretion to prohibit such clothing. Later, Koopman met with the plaintiff and his parents to discuss the

shirts. Koopman told them that the plaintiff could not wear clothing to school that depicted weapons.

Despite Koopman's warnings, the plaintiff continued to wear his shirts to school. When he did so, teachers required him to cover the shirts or wear them inside out. If he refused to comply, the teachers disciplined him by sending him to "the cubicle," which appears to be a form of in-school suspension. The plaintiff describes the cubicle as a small office space at the school that is segregated from other students and in which no instruction is provided.

Shortly after Koopman prohibited the plaintiff from wearing the shirts, the plaintiff commenced this action under 42 U.S.C. § 1983, alleging that the prohibition violated his right to free speech under the First Amendment. The plaintiff sued Koopman both individually and in his official capacity as the principal of Markesan High School. He sought only declaratory and injunctive relief, namely, an order allowing him to continue wearing the shirts to school without being disciplined.

Koopman moved to dismiss the original complaint on a number of grounds. The plaintiff then amended his complaint. The amended complaint alleged that, after the plaintiff filed this suit, Koopman stopped disciplining him for wearing the shirts. Upon reading this allegation, I questioned whether the case had become moot and asked the parties to file briefs on that issue.

In response to my request, the plaintiff indicated that the Markesan District Schools (*i.e.*, the school board) had amended the high school's dress code to explicitly prohibit clothing that depicts weapons. The relevant part of the dress code now reads as follows:

> Clothing or articles displaying obscenities, suggestive slogans and/or images, nudity, gangs, crime, violence, occult worship, slanderous or harassing material, encouragement of disruptive behavior, weapons, beer/alcohol, tobacco, marijuana or other drug designs are prohibited.

(Markesan High School Handbook 2018–19 at 24, ECF No. 21-1.) Moreover, shortly after the 2018–19 school year started, the plaintiff wore one of his shirts to school and was required to cover it up. The plaintiff has since further amended his complaint to challenge the defendant's enforcement of the revised dress code to the extent that it prohibits students from wearing T-shirts that depict weapons in a non-violent, non-threatening manner.

In September, the plaintiff filed a motion for a preliminary injunction to prevent Koopman from disciplining the plaintiff for wearing the "Celebrate Diversity" and "LOVE" T-shirts to school. A short time later, the plaintiff wore a third shirt to school. This shirt contains no images of weapons but displays text reading "IF GUNS KILL PEOPLE, I GUESS PENCILS misspell words CARS drive drunk & SPOONS make people fat." (Second Schoenecker Decl. ¶ 8.) That day, Koopman called the plaintiff to his office and told him he had to cover the T-shirt because it had the word "gun" in it. According to the plaintiff, Koopman said that this was the school's policy. Based on this interaction, the plaintiff filed a second motion for a preliminary injunction, this time seeking an order allowing him to wear clothing that contains the word "gun" in a non-violent, non-threatening manner.

Koopman responded to the motion for a preliminary injunction. In addition, he filed a motion to dismiss the second amended complaint. The primary ground for this motion is that Koopman is not the proper defendant. Instead, argues Koopman, the only

4

proper defendant would be the Markesan District Schools, which the plaintiff has not sued.

## II. DISCUSSION

### A. Mootness

Initially, I follow up on my prior inquiry regarding whether the case has become moot. Obviously, because the school district amended its dress code to explicitly ban clothing depicting weapons, and because Koopman continues to prohibit the plaintiff from wearing the shirts to school, the plaintiff's request for declaratory and injunctive relief is not moot. However, to the extent that the plaintiff's claim involves Koopman's prior enforcement of the old dress code, it is obviously moot, as the plaintiff does not seek damages. In any event, I do not understand the plaintiff to be pressing any claims relating to the old dress code.

### B. Motion to Dismiss

Koopman moves to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6). He contends that, under 42 U.S.C. § 1983, he cannot be sued for declaratory and injunctive relief in his individual capacity and that he cannot be sued for any relief whatsoever in his official capacity. Instead, argues Koopman, if the plaintiff wishes to obtain injunctive relief against enforcement of the dress code, he must sue the Markesan School District, which is the municipal agency that promulgated the dress code.

Koopman is generally correct that a claim for injunctive relief against a public official ordinarily proceeds as an official-capacity claim. *See, e.g., Scott v. Lacy*, 811 F.2d 1153, 1153–54 (7th Cir. 1987). However, the plaintiff has sued Koopman in his

official capacity as the principal of the Markesan High School, so this case is not out of the ordinary. Koopman, however, contends that naming him in his official capacity was not good enough and that the plaintiff should have instead sued the Markesan School District. But it is well-established that suing a municipal official in his or her official capacity is the same thing as suing the municipality of which he is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 691 n.55 (1978); *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014). Thus, by suing Koopman in his official capacity, the plaintiff *has* sued the Markesan School District.

In his motion to dismiss, Koopman also emphasizes that a plaintiff seeking injunctive relief against a municipality must comply with *Monell*, that is, must show that the harm for which he seeks redress is being caused by a municipal policy or custom. *See Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 31 (2010). But the allegations of the second amended complaint clearly satisfy *Monell*. The complaint alleges that the official policy of the Markesan District Schools, as stated in the student handbook, is to prohibit the wearing of clothing that depicts firearms, even when the depiction is non-violent and non-threatening. (Second Am. Compl. ¶¶ 19–20, 36.) Accordingly, the plaintiff has alleged that the injury for which he seeks redress was caused by an official municipal policy.[1]

---

[1] Koopman argues that he does not have "final policymaking authority" and therefore his actions cannot serve as a basis to impose liability on the municipal entity. *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468-69 (7th Cir. 2001). But the plaintiff would have to show that Koopman was a final policymaker only if he could not otherwise satisfy *Monell*. Here, as discussed in the text, the plaintiff has satisfied *Monell* by alleging that the district's official dress code prevents him from

### C. Motion for Preliminary Injunction

To be entitled to preliminary relief, the plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest. *Higher Society of Indiana v. Tippecanoe County, Ind.*, 858 F.3d 1113, 1116 (7th Cir. 2017). However, this is a free speech case, and in First Amendment cases, the likelihood of success on the merits will often be the determinative factor. *Id.* This is so because even short deprivations of First Amendment rights constitute irreparable harm, and because the balance of harms normally favors granting preliminary relief when the plaintiff has shown that the defendant's conduct is likely unconstitutional. *See id.* Thus, in First Amendment cases, the analysis normally begins and ends with the likelihood of success on the merits. *Id.*

Below, I address whether the plaintiff has shown a likelihood of success on the merits. But before I turn to that question, I address the defendant's argument that I should not consider the plaintiff's second motion for a preliminary injunction—the one that pertains to the "If guns kill people . . ." shirt—because it seeks relief for conduct not mentioned in the second amended complaint.

#### 1. Scope of Complaint

The defendant contends that I should not consider the plaintiff's request for injunctive relief with respect to the "If guns kill people . . ." shirt because he has not

---

wearing the T-shirts that he wishes to wear. Thus, he does not need to also show that Koopman has final policymaking authority.

7

amended his complaint to include the facts relating to this shirt.[2] However, under federal notice-pleading rules, plaintiffs only need to plead claims; they do not have to plead all of the facts that are relevant to those claims. *See, e.g., Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Here, the second amended complaint alleges a single claim: that the school is violating the plaintiff's constitutional rights by preventing him from wearing non-violent, non-threatening shirts that express his beliefs about the value to society of the personal possession of firearms. The facts relating to the third shirt do not give rise to a new claim; they fit within the existing claim. Therefore, the plaintiff was not required to add those facts to his complaint before seeking an injunction. Accordingly, I will evaluate the plaintiff's request for injunctive relief with respect to all three shirts.

### 2. Likelihood of Success on the Merits

#### a. Protected Speech

The next question is whether the plaintiff has shown that his wearing the shirts is a form of expression protected by the First Amendment. With respect to the "If guns kill people . . ." shirt, the answer is easy: wearing the shirt is protected expression because it states an opinion about gun ownership. Using an analogy, the shirt makes the obvious point that a gun is an inanimate object and therefore can't kill a person unless someone uses it. This is a common argument made by those who oppose gun control, and any person who saw the shirt would readily understand it to mean that the plaintiff opposed laws restricting private ownership of firearms. Thus, when he wears the shirt, the

---

[2] Technically, if allegations concerning the third shirt needed to be included in the complaint, the plaintiff would have to file a supplemental complaint under Federal Rule of Civil Procedure 15(d) rather than an amended complaint, as the events relating to the that shirt did not occur until after the second amended complaint was filed.

plaintiff expresses his personal belief on a matter of public concern. Expressing that belief is protected by the First Amendment.

As to the other shirts, the defendant contends that they are not protected expression because they do not convey specific, unambiguous messages. He notes that although the plaintiff explains that he wears the shirts to show his support for gun ownership, this message is not apparent from the shirts themselves. Indeed, notes the defendant, the artist who created the "LOVE" shirt stated that he did not intend for it to convey a pro-gun message. Rather, the artist said that, in using weapons to spell "LOVE," his intent was to "turn something that plagues society into a positive." *See* Bruce Vielmetti, *The artist behind gun T-shirt says both sides in Wisconsin school controversy are missing the point*, Milwaukee Journal Sentinel, Apr. 16, 2018, *available at* https://www.jsonline.com/story/news/local/wisconsin/2018/04/16/artist-behind-gun-t-shirt-says-both-sides-wisconsin-school-controversy-missing-point/514574002/(last viewed Nov. 9, 2018).

In arguing that the shirts are not protected expression, the defendant cites cases involving claims that certain forms of *conduct*—such as flag-burning or baring one's breasts in public—are protected by the First Amendment. *E.g. Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017). In such cases, the conduct will be protected only if it is "inherently expressive" and "comprehensively communicate[s] its own message without additional speech." *Tagami*, 875 F.3d at 378. But the plaintiff's shirts are not analogous to the conduct at issue in those cases. True, *wearing* the shirts is conduct, but the shirts themselves are pure speech, in that they contain images and words that convey a message. The message

9

may be ambiguous and open to interpretation, as the defendant has shown, but this does not deprive it of First Amendment protection. Rather, "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995). Otherwise, the First Amendment "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Id.*

The defendant also relies on a case in which the Seventh Circuit found that a T-shirt worn by elementary-school students was not protected expression. *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465–66 (7th Cir. 2007). But in that case, and unlike in this one, the shirt at issue did not convey any significant message or idea. The shirt contained a "talentless infantile drawing" and some words indicating that the wearer was a member of the school's class of 2003. *Id.* at 466 & exhibits. It was no more deserving of First Amendment protection than a shirt that depicted the manufacturer's logo or the owner's name. *Id.* at 466. Here, in contrast, the "Celebrate Diversity" and "LOVE" T-shirts convey more substantial messages; they are akin to works of art. Indeed, the "LOVE" T-shirt is based on a work of art, as reported in the newspaper article cited above. And the "Celebrate Diversity" shirt is a form of parody, which is protected expression. *See Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1227 (7th Cir. 1993). It takes a phrase that normally applies to people and repurposes it for firearms.

Thus, I conclude that the plaintiff's wearing the three shirts in question is protected expression.

### b. Applicable "School Speech" Standard

Next, the parties dispute which line of Supreme Court "school speech" cases applies to this case. The plaintiff contends that this case is governed by *Tinker v. Des Moines Independent Community School District*, in which the Supreme Court held that a high school could censor the speech of its students only if the speech "would materially and substantially disrupt the work and discipline of the school." 393 U.S. 503, 509 (1969). The defendant contends that *Tinker* does not apply and instead this case is governed by *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988). Under *Kuhlmeier*, a court must conduct a "forum analysis" to determine whether a restriction on school speech is permitted.

It is unnecessary to discuss this issue in detail, for there is a Seventh Circuit case that answers the question. In *Nuxoll ex rel. Nuxoll v. Indian Prairie School District #204*, 523 F.3d 668 (7th Cir. 2008), which the Seventh Circuit considered a second time under the name *Zamecnik v. Indian Prairie School District #204*, 636 F.3d 874 (7th Cir. 2011), the court addressed a high school's decision to prohibit a student from wearing a shirt that bore the legend "Be Happy, Not Gay," which the student wore to express a message of disapproval toward homosexuality. To determine whether the First Amendment permitted the school to censor the message on the shirt, the court applied *Tinker*'s "substantial disruption" standard, although in a somewhat softened form. *Nuxoll*, 523 F.3d at 673. The court held that the school did not have to prove that "unless the speech at issue is forbidden serious consequences will *in fact* ensue." *Id.* (emphasis in original). Instead, it was "enough for the school to present facts which might reasonably lead school officials to forecast substantial disruption." *Id.* The court

determined that the school could satisfy this standard by showing "reason to think that a particular type of student speech will lead to a decline in students' test scores, an upsurge in truancy, or other symptoms of a sick school." *Id.* at 674.

*Nuxoll* and *Zamecnik* involved a high school's attempt to prevent a student from wearing an expressive T-shirt that was inconsistent with the school's dress code. Because the present case also involves a high school's attempt to prevent a student from wearing an expressive T-shirt that that is inconsistent with its dress code, I will apply the softened *Tinker* standard articulated in that case.

### c. Substantial Disruption

To show that he reasonably believed that the T-shirts would be likely to cause substantial disruption, the defendant cites the following facts. First, he states that staff members working at the school told him that the shirts "made them uncomfortable and concerned about school safety," especially because the plaintiff wore the shirts shortly after the shooting at Marjory Stoneman Douglas High School in Parkland, Florida. (Decl. of John Koopman ¶ 4.) Second, he notes that some students at Markesan High School participated in a walkout to protest school gun violence and to remember the 17 victims killed in the Parkland shooting, and that some Markesan students in general are concerned about a shooting occurring at their school. (*Id.* ¶¶ 5–7.) Third, the defendant states that "class instruction was disrupted on multiple occasions due to student discussions and arguments about the [plaintiff's] shirts." (*Id.* ¶ 12.) Finally, the defendant states that, after the plaintiff filed this lawsuit and news outlets came to the school to interview him, students became distracted by the news crews and had disruptive discussions during class about the media presence. (*Id.* ¶ 13.)

This last reason clearly does not support the defendant's position that the school may censor the plaintiff's speech. Any disruption related to the media presence on campus was not caused by the plaintiff's shirts, but by the defendant's decision to censor the shirts and the ensuing lawsuit. The media would not have taken an interest in the plaintiff's conduct had the defendant simply allowed the plaintiff to continue wearing the shirts. So even if the media presence qualifies as a substantial disruption, the disruption cannot be attributed to the shirts themselves. Moreover, there is no reason to think that the media will continue visiting the school if the plaintiff is allowed to start wearing the shirts again.

The defendant's remaining three reasons support his decision to ban the shirts, but only slightly. As far as the record reveals, no students felt threatened by the plaintiff's shirts. Yes, some students were concerned about school shootings in general, but no evidence suggests that the plaintiff's shirts contributed to any student's anxiety. The evidence is that the actual school shooting in Parkland, Florida was what prompted the students' concerns. The defendant tells us that the plaintiff's shirts made some staff members uncomfortable and concerned about school safety, but there is no evidence that any staff member's ability to provide instruction to students was affected. Moreover, the staff members' reaction to the shirts seems unreasonable, as none of the shirts promote gun violence. The defendant also states that class instruction was "disrupted" on multiple occasions "due to student discussions and arguments about the shirts." (Koopman Decl. ¶ 12.) But he does not elaborate on this statement by explaining exactly what happened, so it is hard to infer that the disruption was substantial or that it

would be reasonable for the defendant to forecast that additional such disruptions will occur if the plaintiff is allowed to continue wearing the shirts.

Accordingly, I find that the defendant has not shown that the school has a reasonable belief that the plaintiff's wearing the shirts will create a threat of substantial disruption, *i.e.*, a threat of a decline in test scores, an upsurge in truancy, or other symptoms of a sick school. Therefore, I also find that the plaintiff has a likelihood of success on the merits.

### 3. Remaining Preliminary-Injunction Factors

As noted above, in First Amendment cases a plaintiff who is likely to succeed on his claim will normally be entitled to a preliminary injunction. However, for the sake of completeness, I briefly discuss the other preliminary-injunction factors. First, absent an injunction, the plaintiff will suffer irreparable harm because the deprivation of First Amendment rights, even for short periods, is deemed irreparable. *See, e.g., Elrod v. Burns.* 427 U.S. 347, 373 (1976). Second, given the plaintiff's likelihood of success, the balance of equities and the public interest also favor the issuance of an injunction: because the defendant has been unable to show that allowing the plaintiff to wear the shirts to school would cause substantial disruption, neither has he shown that he or the public would be harmed by an injunction. Accordingly, I will grant both of the plaintiff's motions.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motions for preliminary injunctions (ECF Nos. 25 & 28) are **GRANTED**. Defendant Koopman, in his

official capacity, is ordered to allow plaintiff Matthew Schoenecker to wear the "Celebrate Diversity," "LOVE," and "If guns kill people . . ." shirts to school.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss the second amended complaint (ECFF No. 32) is **DENIED**. His motions to dismiss the earlier versions of the complaint (ECF Nos. 9 & 16) and the plaintiff's motion for leave to file the first amended complaint (ECF No. 14) are **DENIED** as **MOOT**.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2018.

s/Lynn Adelman\
LYNN ADELMAN\
District Judge